# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RALPH NESBITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. |
| WELLPATH and EMILY B. HOLMES, ) | 20-12126-FDS |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION
## TO DISMISS AND PLAINTIFF'S MOTION TO AMEND

**SAYLOR, C.J.**

This is a dispute filed by Ralph Nesbitt, a *pro se* plaintiff and former inmate at Old Colony Correctional Center, concerning alleged delay of medical treatment.[1] He has sued Wellpath, a provider of health-care services at the Correctional Center, and Emily B. Holmes, the Unit Director/Health Services Administrator who processed his inmate grievance form. The complaint asserts claims under 42 U.S.C. § 1983, Article 26 of the Massachusetts Declaration of Rights, and the Massachusetts Tort Claims Act.

Wellpath and Holmes have moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Nesbitt subsequently filed a motion to amend the complaint. For the reasons set forth below, the motion to dismiss will be granted and the motion to amend will be denied.

---

[1] It appears that Nesbitt was later transferred to the Massachusetts Correctional Institution at Concord, as reflected in plaintiff's notice of change of address. (Docket No. 16).

I.    **Background**

    A.    **Factual Background**

The facts are set forth as alleged in the complaint and its attachments.[2]

At all times relevant to this dispute, Ralph Nesbitt was an inmate in custody at the Old Colony Correctional Center ("OCCC"), a facility administered by the Massachusetts Department of Correction. (Compl. 22).

Wellpath is a health-care company that provides medical services at the Correctional Center. (*See id.* at 21). Emily B. Holmes is the Unit Director/Health Services Administrator who processed Nesbitt's inmate grievance form. (*Id.* at 23).

Between October 26 and November 4, 2020, Nesbitt submitted four sick call request forms, or "sick slips," requesting medical treatment. (*Id.* at 17-20).[3] On October 26, he filed a sick slip complaining that his footwear did not "properly accommodate[]" his feet, causing discomfort. (*Id.* at 20). On October 27, he filed a sick slip complaining about an infection causing "itching skin" and "changes in skin color" on his leg. (*Id.* at 18). On October 31, he filed another sick slip, stating that his leg had a rash and "bacteria infected skin," and requesting to see a nurse. (*Id.* at 19). On November 4, he submitted a fourth sick slip, repeating his complaint that he had a rash on his leg causing itching. (*Id.* at 17). He also stated that there was "deliberate indifference, infliction of pain, [and] delay of treating leg infection." (*Id.*).

On November 5, Nesbitt was seen by a nurse in response to the four sick slips. (*See id.* at

---

[2] For motions to dismiss under Fed. R. Civ. P. 12(b)(6), courts are generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71-72 (1st Cir. 2014).

[3] For present purposes, the Court will refer to the dates that Nesbitt signed the sick slips. Each sick slip also features a box for "Date/Time Received," but those dates are often different and inconsistent. (*See* Compl. 14-20). In any event, any differences between the date signed and date received do not affect the merits.

17-20). The nurse conducted an assessment including examination of his complaints of thigh and groin itching and discoloration. (*Id.* at 19). The nurse's notes indicated a treatment regimen of "miconazole, hydrocortisone, triamcinolone x 2 weeks." (*Id.*).

Also on November 5, Nesbitt filed an inmate grievance form complaining of "deliberate indifference to serious medical needs" and "denial of treatments that could eliminate pain and suffering" related to the leg rash. (*Id.* at 23). That same day, Holmes issued a partial approval of his grievance. (*Id.*). In her decision, she explained that Nesbitt had met with a medical provider on October 21, at which time the provider noted that his rash had resolved. (*Id.*).[4] She also wrote that he had "not submitted any recent sick slips related to an itchy skin rash." (*Id.*). Nesbitt characterized Holmes's decision as "false and a lie." (*Id.*).

On November 7, Nesbitt filed a Patient Medical Grievance and Appeal Form with Wellpath, appealing the partial approval of his original grievance. (*Id.* at 21). He claimed that his medical needs were met with "deliberate indifference" after filing four sick slips related to his skin condition. (*Id.*). He requested monetary compensation as a remedy. (*Id.*).[5]

On November 11, Nesbitt filed another sick slip complaining of the infection on the inside of his leg causing itching and a rash. (*Id.* at 14). A nurse's note states "patient scheduled [with] provider 11/13/2020." (*Id.*). On November 13, he filed another sick slip complaining of the same problem. (*Id.* at 15). It is unclear whether he met with a provider on November 13.

On November 19, Lisa Black Sholudko, a grievance appeals coordinator with the Health

---

[4] Specifically, Holmes's decision states, "I have partially-approved your grievance request for treatment of your skin rash after confirming that you met with your provider on 10/21/2020 for a Chronic Disease visit and your provider noted that your rash had resolved and you expressed no complaints related to a skin condition." (Compl. 23). It is not clear from the record whether plaintiff was seen by a provider on October 21, 2020, or if this is a typographical error in the decision.

[5] This appeal appears to have been postmarked on November 12. (Compl. 22).

Services Administrator, issued a decision on Nesbitt's appeal. (*Id.* at 22). Sholudko first noted that on November 5, the date he filed his initial grievance with Wellpath, he was seen by a nurse for the sick slips concerning his skin condition. (*Id.*). She stated that Holmes's decision on November 5 was based on a review of Nesbitt's medical record. (*Id.*). She further stated that Holmes would not have seen the sick slips filed between October 26 and November 4, because sick slips are not scanned into the medical record until a patient has been seen, usually on the next business day. (*Id.*). She further noted that Nesbitt had seen a medical provider and received treatment for his skin condition. (*Id.*). She also stated that the provider saw him three days after starting treatment, and that the provider saw improvement in his skin condition. (*Id.*). She noted that the provider scheduled a follow-up within the next two weeks to confirm that the treatment continued to be effective. (*Id.*). Finally, she explained that the grievance and appeals process could not address his request for monetary compensation, and that she had forwarded his request to Wellpath's legal department. (*Id.*).

### B.  Procedural Background

On November 27, 2020, Nesbitt filed a *pro se* complaint. On February 16, 2021, he filed an amended complaint. Although it is unclear, the amended complaint appears to allege claims under 42 U.S.C. § 1983, asserting a violation of the Eighth Amendment; Article 26 of the Massachusetts Declaration of Rights; and the Massachusetts Tort Claims Act. Wellpath and Holmes have now moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Nesbitt then filed a "motion for amendment of order the amended petition," which Wellpath and Holmes oppose.

## II.  Legal Standard

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

When, as here, a motion to dismiss is filed against a *pro se* litigant, any document filed by the *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 116 F.3d 464, at *1 (1st Cir. June 23, 1997) (per curiam)).

### III.     Motion to Dismiss

As noted, the complaint appears to allege claims under 42 U.S.C. § 1983, asserting a violation of the Eighth Amendment; Article 26 of the Massachusetts Declaration of Rights; and the Massachusetts Tort Claims Act.[6]  Pursuant to Fed. R. Civ. P. 12(b)(6), defendants have moved to dismiss for failure to state a claim upon which relief can be granted.  Each claim will be discussed in turn.

#### A.     42 U.S.C. § 1983

##### 1.     Holmes

The complaint first asserts a claim under § 1983 against Holmes for violations of the Eighth Amendment.[7]  "[T]o succeed in an Eighth Amendment claim under section 1983 based

---

[6] Identification of those claims is supported by the following paragraph of the complaint:

> [Defendants] were deliberately indifferent to plaintiff['s] serious medical needs in violation of plaintiff Nesbitt['s] rights under Article 26 of the Massachusetts Declaration of Rights, the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983 and under G.L.C. 258 "health and safety."

(Compl. 8).  Elsewhere in the complaint, however, he lists other authorities, including the Americans with Disabilities Act, 42 U.S.C. § 1997, and 103 C.M.R. 491.  It is unclear whether the complaint could be liberally construed to assert such claims without any connection to any factual allegations.  Even if it could, those claims would be dismissed.  As to the ADA, the "First Circuit . . . has held that for inadequate medical care to give rise to a claim under the ADA or the Rehabilitation Act, the denial of care must be framed within some larger theory of disability discrimination."  *Sepulveda v. UMass Corr. Health Care*, 160 F. Supp. 3d 371, 392 (D. Mass. 2016) (internal quotation marks omitted) (citing *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006)).  As to 42 U.S.C. § 1997, the Civil Rights of Institutionalized Persons Act authorizes "the *attorney general* to initiate a suit, [and] does not create a private right of action in favor of an *individual*."  *Pope v. Bernard*, 2011 WL 478055, at *1 (1st Cir. Feb. 10, 2011) (per curiam) (unpublished).  And 103 C.M.R. 491 establishes "rules and procedures governing the filing and resolution of inmate grievances."  103 MASS. CODE REGS. 491.01 (2022).  However, even if the complaint could be construed to assert a claim based on inadequacy of the grievance procedure, "the Constitution does not create a liberty interest in, or other right to, access to a prison grievance procedure."  *Mattei v. Dunbar*, 2015 WL 926044, at *6 (D. Mass. Mar. 4, 2015); *accord Amran v. Cowin*, 2019 WL 3530916, at *3 (D. Mass. Aug. 2, 2019) (listing cases).

[7] At the outset, it is not clear whether Holmes is an employee of the Department of Correction or Wellpath, raising the question of whether § 1983 properly applies to her.  A § 1983 claim requires that "the conduct complained of transpired under color of state law," which is the "functional equivalent of the Fourteenth Amendment's 'state action' requirement."  *Santiago v. P.R.*, 655 F.3d 61, 68 (1st Cir. 2011).  However, at least one other judge in this District has undertaken a § 1983 analysis with respect to a health services administrator at Old Colony Correctional Center.  *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 657-60 (D. Mass. 2016).

6

on denied or inadequate medical care," a plaintiff must prove (1) an objectively serious medical need and (2) that the defendant exhibited "deliberate indifference" to the prisoner's needs. *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 657 (D. Mass. 2016) (citing *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)).

### a. Objectively Serious Medical Need

"[A] medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). "The 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment." *Id.* at 497-98. The inquiry "contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Abernathy v. Anderson*, 984 F.3d 1, 8-9 (1st Cir. 2020) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Here, the claimed objectively serious medical need is a rash on plaintiff's leg, which caused itchiness, pain, and discomfort. However, skin rashes generally do not rise to the level of an objectively "serious" medical need within the meaning of the Eighth Amendment. *See Lopes*, 177 F. Supp. 3d at 660 (finding "no showing that the skin rashes, skin tears, areas of hyperpigmentation and subcutaneous skin nodules constituted a serious medical need"); *Cryer v. UMass Med. Corr. Health*, 2011 U.S. Dist. LEXIS 152793, at *43 (D. Mass. Nov. 25, 2011) (finding it "doubtful" that skin condition requiring use of anti-fungal cream or skin lotion was objectively serious). Thus, without more, it is unlikely that the skin rash and generic "infection" identified in the complaint amount to an objectively serious medical need.

Of course, the length of delay of treatment also bears on the seriousness of plaintiff's medical needs. While a condition such as a skin rash may not ordinarily qualify as objectively

serious, it may become serious after substantial delay. *See Leavitt*, 645 F.3d at 497-98. Here, however, the delay was relatively minor. Plaintiff's first sick slip was filed on October 26, 2020, at which time he only complained that his footwear did not "properly accommodate[]" his feet. He was seen by a nurse ten days later on November 5, 2020, and he received medical treatment for his condition. It is also significant that the complaint does not allege that the skin rash was caused or exacerbated by the delay. The complaint therefore fails to allege an objectively serious medical need.

### b. Deliberate Indifference

Even assuming *arguendo* that plaintiff's skin rash was objectively serious, the complaint must also set forth sufficient facts that Holmes was deliberately indifferent to his medical needs. "Deliberate indifference" requires that the defendant be subjectively "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere medical negligence will not support a § 1983 claim. "[R]ather, the treatment provided must have been so inadequate as to constitute an unnecessary and wanton infliction of pain . . . ." *Lopes*, 177 F. Supp. 3d at 657-58 (quoting *Leavitt*, 645 F.3d at 497) (internal quotation marks omitted). "Deliberate indifference . . . may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" *Ruiz-Rosa*, 485 F.3d at 156 (quoting *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)).

Here, the complaint appears to allege that Holmes was deliberately indifferent to plaintiff's serious medical needs by delaying treatment for his rash. However, it does not allege with any particularity how Holmes's partial approval of his grievance, granted on the same day he was seen by a nurse, delayed treatment for his condition. Such allegations do not rise to the

level of "wanton" decisions to delay care necessary to establish deliberate indifference. *See Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) (affirming dismissal of claim "when nothing suggests that the medical judgment was absurd or that improper reasons were given for refusing treatment"); *see Feliciano-Hernandez v. Pereira-Castillo,* 663 F.3d 527, 534 (1st Cir. 2011) (finding conclusory allegations of deliberate indifference insufficient to establish claim). The complaint also does not contain any factual allegations to show that Holmes had a "sufficiently culpable state of mind, namely one of 'deliberate indifference' to [the] inmate's health or safety." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2011).

Accordingly, the motion to dismiss will be granted to the extent it seeks dismissal of the § 1983 claim against Holmes.

### 2. **Wellpath**

The complaint also asserts a claim under § 1983 against Wellpath. A threshold issue is whether the statute properly applies to Wellpath, which is a private company working as a contractor. A private entity contracting with a state or local government to provide medical services in a prison is likely a government actor for purposes of § 1983. *See Sosa v. Mass. Dep't of Corr.*, 2019 WL 3557701, at *6 (D. Mass. Aug. 2, 2019).[8]

To prevail on a theory of municipal liability against Wellpath, plaintiff must show that "the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385

---

[8] While the First Circuit has never explicitly held that a private entity such as Wellpath should be treated as a municipality for purposes of § 1983, *see Leavitt*, 645 F.3d at 504 n.30, other district courts in this Circuit have imposed the requirements of a *Monell* claim on such entities. *See Witham v. Corizon, Inc.*, 2012 WL 5267657, at *7 n.4 (D. Me. Sept. 17, 2012) (stating that "Courts of Appeals in other circuits have expressly concluded that when private entities contract to provide jail inmates with medical services they are performing a function that is traditionally reserved to the state and that because they provides services that are municipal in nature they are functionally equivalent to a municipality for purposes of 42 U.S.C. § 1983 suits."); *Sosa*, 2019 WL 3557701, at *6 (applying *Monell* to private contracted prison medical services provider).

9

(1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Therefore, plaintiff must show both the existence of a policy or custom and a direct causal link between that policy and the alleged constitutional deprivation. *City of Canton*, 489 U.S. at 385.

Here, the complaint fails to "identif[y] the custom or practice at issue." *Wilmot v. Tracey*, 938 F. Supp. 2d 116, 150 (D. Mass. 2013). Additionally, "[w]here, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom." *Leavitt*, 645 F.3d at 504.

Accordingly, the motion to dismiss will be granted to the extent it seeks dismissal of the § 1983 claim against Wellpath.

### B. Article 26 of Massachusetts Declaration of Rights

The complaint also asserts a claim under Article 26 of the Massachusetts Declaration of Rights. Like the Eighth Amendment, Article 26 prohibits "cruel and unusual punishments." Mass. Const. art. 26; U.S. Const. amend. VIII.

The Massachusetts Declaration of Rights does not provide a private right of action. The Massachusetts Supreme Judicial Court has "never held" that such a right exists. *See Pimentel v. City of Methuen*, 323 F. Supp. 3d 255, 273 (D. Mass. 2018). "It did suggest, 35 years ago, in dicta, that such a right 'may' be available." *Id.* (citing *Phillips v. Youth Dev. Program, Inc.*, 390 Mass. 652, 657-58 (1983)); *see also Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction*, 406 Mass. 156, 159-60 (1989). But in the time since, no Massachusetts appellate court has ever held that such a right exists—at least in suits for money damages such as this one. *See, e.g., Doe v. Sex Offender Registry Bd.*, 94 Mass. App. Ct. 52, 64 (2018) (recognizing a private right of action for injunctive relief but "declin[ing] to recognize one" for claims for money damages); *Rodriguez v. Bos. Pub. Schs.*, 2019 WL 3409982, at *6 (D. Mass. July 29, 2019). Whether to recognize such a right of action is a decision that "is up to the courts of Massachusetts, not this

Court." *Pimentel*, 323 F. Supp. 3d at 274.

Arguably, the *pro se* complaint could be construed liberally to assert a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I. The MCRA provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." *Id.* "[T]he MCRA contemplates a two-part sequence: [liability may be found where] (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that [he] has the constitutional right to do." *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009). Here, however, the complaint does not allege that defendants threatened, intimidated, or coerced plaintiff. Therefore, even assuming that a claim under the MCRA has been asserted, it necessarily fails.

Accordingly, the motion to dismiss will be granted to the extent it seeks dismissal of the Article 26 claim against Holmes and Wellpath.

### C. Massachusetts Tort Claims Act

Finally, the complaint asserts a claim under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258.

Pursuant to the MTCA, "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." Mass. Gen. Laws ch. 258, § 2. Public employees, however, are immune from liability under the MTCA for negligent acts when acting within the scope of their employment. *Id.* ("[N]o such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or

11

employment.").

Here, a threshold issue is whether Holmes and Wellpath are subject to the MTCA. If Holmes is a public employee, she is immune from liability for negligent acts committed within the scope of her employment. It is also unclear whether the MTCA applies to Wellpath. The complaint contains no plausible allegations that Wellpath is a public employer, and private contractors are specifically exempted from the MTCA. *See* M.G.L. ch. 258, § 1; *Commesso v. Hingham Hous. Auth.*, 399 Mass. 805, 807 (1987). On similar facts, another judge in this District held that because a prison healthcare provider was a private contractor, "no MTCA claim may be brought against it." *Lopes v. Riendeau*, 2017 WL 1098812, at *7 (D. Mass. Mar. 23, 2017).

If defendants are not subject to the MTCA, the *pro se* complaint could be construed liberally to assert a general negligence claim under Massachusetts law. However, if for some reason they are subject to the MTCA, the underlying claim of negligence must still be plausible. *See Saldivar v. Racine*, 818 F.3d 14, 20-21 (1st Cir. 2016) (affirming dismissal of negligence claim brought under MTCA where complaint did not plausibly allege proximate cause); *Nasir v. Town of Foxborough*, 2020 WL 1027780, at *5 (D. Mass. Mar. 3, 2020) (dismissing MTCA claim for negligent infliction of emotional distress where complaint alleged no more than "formulaic recitation of the elements"); *Saris v. Flagstar Bank*, 397 F. Supp. 3d 110, 113 (D. Mass. 2019) (dismissing negligence claim under Massachusetts law for failure to "plausibly plead that Defendant owed him a duty of care").

"To state a negligence claim under Massachusetts law, a plaintiff must allege that (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; (3) damage resulted; and (4) the defendant's breach caused that damage." *Saldivar*, 818 F.3d at 20-

21 (citing *Jupin v. Kask*, 447 Mass. 141, 146 (2006)). "Whether negligent conduct is the proximate cause of an injury depends . . . on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct." *Kent v. Commonwealth*, 437 Mass. 312, 320 (2002).

Here, the complaint does not even include a mere "formulaic recitation of the elements," let alone sufficient facts to state a negligence claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. There are no allegations of duty, breach, actual causation, proximate causation, or injury. Even if the Court were to infer from the attachments to the complaint that plaintiff suffered an injury in the form of his rash, the complaint does not identify how Holmes and Wellpath breached a duty owed to plaintiff or how they were the actual and proximate causes of his injury.

Accordingly, the motion to dismiss will be granted to the extent it seeks dismissal of the MTCA claim against Holmes and Wellpath.

**IV.     Motion to Amend**

Under Rule 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances. Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court does not have to "mindlessly grant every request for leave to amend. When a proffered amendment . . . would serve no useful purpose, the district court need not allow it." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006).

Here, plaintiff's motion to amend and the accompanying affidavit contain only additional legal arguments in opposition to defendants' motion to dismiss, and the motion to amend does not attach a proposed amended complaint. "The absence of supporting information may, in and of itself, be sufficient reason for the denial of leave to amend." *Aponte-Torres*, 445 F.3d at 58; *see Riddick v. Bos. Hous. Auth.*, 2021 WL 5828046, at *1 (D. Mass. Dec. 8, 2021) (denying leave to amend *pro se* complaint where motion was "not accompanied by a proposed second amended complaint and . . . [failed] to provide a clear statement of the claims [plaintiff] intends to assert and the specific factual allegations that support those claims"); *Pirrone v. Leppo*, 2006 WL 8458433, at *5 (D. Mass. May 5, 2006) (recommending denial of *pro se* motion to amend that failed to offer new information or claims). Accordingly, the motion to amend will be denied.

**V.     Conclusion**

For the foregoing reasons, defendants' motion to dismiss (Docket No. 18) is GRANTED and plaintiff's motion to amend (Docket No. 20) is DENIED.

**So Ordered.**

Dated: March 2, 2022

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court